# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCY DANFORTH,<br>KRISTINA FRITSCH, and<br>KIM WILSON,<br>*on behalf of themselves and all others similarly situated,*<br><br>          Plaintiffs,<br><br>    v.<br><br>TOWN SPORTS INTERNATIONAL, LLC and TOWN SPORTS INTERNATIONAL HOLDINGS, INC. d/b/a NEW YORK SPORTS CLUBS, BOSTON SPORTS CLUBS, WASHINGTON SPORTS CLUBS, PHILEDELPHIA SPORTS CLUBS, PALM BEACH SPORTS CLUB, LIV FITNESS CLUBS, AROUND THE CLOCK FITNESS, LUCILLE ROBERTS, CHRISTIE'S FITNESS, and TOTAL WOMAN GYM AND SPA,<br><br>          Defendants. | CASE NO.  7:20-cv-03195<br><br>**<u>CLASS ACTION</u>**<br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Nancy Danforth ("Danforth"), Kristina Fritsch ("Fritsch"), and Kim Wilson ("Wilson") (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, hereby bring this Class Action Complaint against Defendants Town Sports International, LLC and Town Sports International Holdings, Inc. d/b/a New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs, Philadelphia Sports Clubs, Palm Beach Sports Club, LIV Fitness Clubs, Around the Clock Fitness, Lucille Roberts, Christie's Fitness, and Total Woman Gym and Spa (collectively, "TSI" or "Defendants"). Plaintiffs make the following allegations based upon actual knowledge as to their own acts, and upon information and belief,

including the investigation of their attorneys, as to all other matters.

## NATURE OF THE ACTION

1.      TSI is one of the leading owners and operators of fitness clubs throughout the United States.

2.      TSI has agreements with its members, pursuant to which TSI agreed to provide members access to its fitness club and use of the facilities ("Gym Access") in exchange for the members' payment of membership fees.

3.      In or about March 2020, the COVID-19 pandemic began spreading across the United States, causing federal, state, and local governments to mandate the closure of non-essential business, including fitness clubs and gyms like those owned and operated by TSI.

4.      TSI knowingly and willingly continued charging membership fees for Gym Access during a period in which it did not and could not provide Gym Access to its members because the fitness clubs were closed to the public.

5.      TSI's improper conduct constitutes not only a breach of the membership agreements, but also unfair and deceptive trade practices deemed unlawful under New York and New Jersey law.

## PARTIES

6.      Plaintiff Danforth is a resident and citizen of Peabody, Massachusetts. Danforth is a member of Boston Sports Club. She joined the Boston Sports Club located in Lynnfield, Massachusetts approximately twenty (20) years ago, in or about 2000. At that time, Danforth entered into a membership agreement with TSI in which she agreed to pay a membership fee in exchange for Gym Access. In or about March 2020, TSI closed its clubs and ceased providing Danforth Gym Access. TSI charged Danforth a monthly membership fee in the amount of $109.00 for the month of April 2020, while the club was closed. TSI has not returned and has retained Danforth's payment for Gym Access during a period in which TSI did not

provide Gym Access to Danforth as set forth in the membership agreement.

7.     Plaintiff Fritsch is a resident and citizen of Brooklyn, New York. Fritsch is a member of Lucille Roberts. She joined the Lucille Roberts Bay Ridge fitness club located at Brooklyn, New York, in or about March 2016. At that time, Fritsch entered into a membership agreement with Lucille Roberts in which she agreed to pay a membership fee in exchange for Gym Access. TSI acquired Lucille Roberts subsequent to Fritsch becoming a member. In or about March 2020, TSI closed its clubs and ceased providing Fritsch Gym Access. TSI charged Fritsch a monthly membership fee in the amount of $24.99 on April 1, 2020, while the club was closed. TSI has not returned and has retained Fritsch's payment for Gym Access during a period in which TSI did not provide Gym Access to Fritsch as set forth in the membership agreement.

8.     Plaintiff Wilson is a resident and citizen of West Milford, New Jersey. Wilson is a member of New York Sports Club. She joined the New York Sports Club located in Butler, New Jersey in 2014. At that time, Wilson entered into a membership agreement with TSI in which she agreed to pay a membership fee in exchange for Gym Access. In or about March 2020, TSI closed its clubs and ceased providing Wilson Gym Access. TSI charged Wilson a monthly membership fee in the amount of $26.65 for the months of March and April 2020, while the club was closed. TSI has not returned and has retained Wilson's payment for Gym Access during a period in which TSI did not provide Gym Access to Wilson as set forth in the membership agreement.

9.     Defendant Town Sports International, LLC is a New York limited liability company with its principal place of business located at 5 Penn Plaza, 4th Floor, New York, NY 10002. Town Sports International, LLC runs and operates gyms under the brands New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs, Philadelphia Sports Clubs, Palm Beach Sports Club, LIV Fitness

Clubs, Around the Clock Fitness, Lucille Roberts, Christi's Fitness, and Total Woman Gym and Spa.

10.    Defendant Town Sports International Holdings, Inc. d/b/a New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs, Philadelphia Sports Clubs, Palm Beach Sports Club, LIV Fitness Clubs, Around the Clock Fitness, Lucille Roberts, Christi's Fitness, and Total Woman Gym and Spa is a Delaware corporation that runs and operates gyms under these names.  Its principal place of business is located at 399 Executive Boulevard, Elmsford, NY 10523.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction because this is a class action, there is minimal diversity, and the matter in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

12.    This Court has specific personal jurisdiction over TSI because both Defendants conduct business in the United States and New York, and this action arises out of that contact with the United States and New York.

13.    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District and because TSI is subject to personal jurisdiction in this District. 28 U.S.C. § 1391(b)(2), (3).

## FACTUAL ALLEGATIONS

14.    Defendant Town Sports International Holdings, Inc. is one of the leading owners and operators of fitness clubs in the United States, particularly in the Northeast and Mid-Atlantic regions. As of December 31, 2019, it owned and operated 186 fitness clubs ("clubs") and collectively served approximately 605,000 members under various brand names, primarily located in the United States.[1]

---

[1]  http://www.townsportsinternational.com/node/15196/html (last visited April 10, 2020).

15.    Defendant Town Sports International, LLC is Town Sports International Holdings, Inc.'s largest wholly owned and operated subsidiary. It has been involved in the fitness industry since 1973 and has grown to become one of the largest owners and operators of fitness clubs in the Northeast region of the United States.[2]

16.    TSI's club base consists of brick and mortar clubs it has developed and constructed, as well as clubs it has acquired.[3] For example, TSI acquired Lucille Roberts brand clubs subsequent to Plaintiff Fritsch becoming a member in 2016.

17.    TSI owns and operates ninety-nine New York Sports Clubs; thirty-one Boston Sports Clubs; nine Washington Sports Clubs; five Philadelphia Sports Clubs; sixteen Lucille Roberts clubs; eleven Total Woman Gym and Spa clubs; three Palm Beach Sports Clubs; one Christi's Fitness club; six Around the Clock Fitness clubs; and two LIV Fitness clubs.[4]

18.    TSI offers various types of memberships, including single club access and variations of multiple club access. At certain locations, TSI also offers memberships that include both gym access and spa services.[5]

19.    In joining a club, a new member signs a membership agreement that typically obligates the member to pay fees ("joining fees") including a one-time initiation fee and the first annual fee. The annual fee is also charged on each anniversary of the enrollment date; however it is not considered a joining fee after

---

[2] Id.

[3] Id.

[4] Id.

[5] Id.

the first payment.[6]

20.    TSI's membership prices are dependent on club location and whether the member joins under a "month-to-month" or "commit" contract. Under the commit contract, new members commit to a one-year membership, generally at a lower monthly rate than a month-to-month membership. Generally, a member may cancel a commit membership at any time for a fee. When the commit contract period is over, the members become month-to-month members until they choose to cancel. As of December 31, 2019, approximately 86% of TSI's total members were on a month-to-month basis.[7]

21.    Upon information and belief, TSI's membership fees range from $24.99 to $120.00 per month.

22.    Upon information and belief, TSI regularly adjusts the monthly membership fees without notice to its members and without requiring written consent or a new membership agreement.  Thus, members are bound to the form of agreement signed at the time they join the club.  This is true of clubs TSI originally opened and acquired, like Lucille Roberts.

23.    As of December 31, 2019, approximately 99% of TSI's members pay their membership dues through monthly electronic fund transfers ("EFT"), with EFT membership revenue constituting approximately 75% of total consolidated revenue for the year ended December 31, 2019.[8]

24.    TSI's annual revenue for the year 2019 was approximately

---

[6] Id.

[7] Id.

[8] Id.

$466,000,000, most of which is derived from TSI's membership fees.[9]

25.      In or about March 2020, the Novel Coronavirus ("COVID-19") began spreading throughout the United States, causing federal, state, and local governments to mandate the closure of non-essential business to stop the spread of the virus. Accordingly, TSI was forced to close all its fitness clubs.

26.      TSI informed all non-executive employees working at its closed clubs that their employment with TSI had been terminated immediately.[10]

27.      Notwithstanding the closure of its fitness clubs and the termination of a majority of its employees, TSI has taken and/or retained membership fees from its members for a period when it is not providing Gym Access, in violation of its membership agreements. To be clear, TSI processed electronic payments for members' monthly fees knowing that its clubs would be inaccessible, charging credit cards, debit cards, and initiating ACH debit transactions.

28.      On April 9, 2020, TSI issued a statement to its members, advising: "[Y]our membership will be put on freeze—at no cost to you—going forward while we are temporarily closed. There is no action required on your part to enact the freeze."[11]

29.      The statement further advises, among other things:

[M]embers will receive additional days of membership access equal to the number of days paid for while the clubs were closed in your area. In additional, all members will be provided with Passport Elite status for one year. Elite members will receive a free three-month guest membership for a friend when all our clubs reopen.

---

[9] Id.

[10] Id.

[11] https://www.newyorksportsclubs.com/page/member-letter (last visited on April 10, 2020).

30.     TSI has not issued a statement advising that it intends to refund the membership fees charged while the clubs have been closed.

31.     Certain membership agreements for TSI clubs contain arbitration provisions requiring individual actions and prohibiting members from participating in or serving as class representatives in a class action.  However, the membership agreements signed by Plaintiffs and thousands of similarly situated members of the Classes defined below do not contain an arbitration provision.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs brings this action on behalf of themselves and a proposed Rule 23(b)(3) nationwide class (the "Class") defined as follows:

> All persons who became members of TSI's clubs, are not parties to a membership agreement containing an arbitration provision, and were charged fees beginning on the date that TSI closed its clubs due to COVID-19.

33.     Danforth brings this action on behalf of herself and a proposed Rule 23(b)(3) subclass (the "Massachusetts Subclass") defined as follows:

> All Massachusetts citizens who became members of TSI's clubs, are not parties to a membership agreement containing an arbitration provision, and were charged fees beginning on the date that TSI closed its clubs due to COVID-19.

34.     Fritsch brings this action on behalf of herself and a proposed Rule 23(b)(3) subclass (the "New York Subclass") defined as follows:

> All New York citizens who became members of TSI's clubs, are not parties to a membership agreement containing an arbitration provision, and were charged fees beginning on the date that TSI closed its clubs due to COVID-19.

35.     Wilson brings this action on behalf of herself and a proposed Rule

23(b)(3) subclass (the "New Jersey Subclass") defined as follows:

> All New Jersey citizens who became members of TSI's clubs, are not parties to a membership agreement containing an arbitration provision, and were charged fees beginning on the date that TSI closed its clubs due to COVID-19.

36. Excluded from the Class and Subclasses (referred to collectively as the "Classes") are: (1) Defendants, including their legal representatives, predecessors, successors, and assigns; (2) Defendants' employees, officers, directors, agents, and representatives; (3) governmental entities; (4) all persons who timely elect to be excluded from the Classes; and (5) the judicial officers and staff to whom this case is assigned.

37. **Numerosity.** The members of the Classes are so numerous that individual joinder of all class members is impracticable. Although the exact number of members of the Class and Subclasses is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, based on available public information about the over 600,000 members of TSI clubs, there are thousands of class members.

38. **Commonality and Predominance.** This action involves common questions of law and fact that will drive the litigation and predominate over any questions affecting only individual class members. Common questions include, but are not limited to:

a. Whether Defendants or their predecessors entered into a membership agreement with Plaintiffs and members of the Class or Subclasses to provide Gym Access;

b. Whether Defendants charged Plaintiffs and members of the Class or Subclasses membership fees for Gym Access that was not provided;

c. Whether Defendants retained payments from Plaintiffs and members of

the Class or Subclasses for Gym Access that was not provided;

d.      Whether Defendants' conduct constitutes a breach of contract;

e.      Whether Defendants' conduct constitutes unfair and/or deceptive business practices;

f.      Whether Defendants obtained a benefit from the payment of membership fees by Plaintiffs and members of the Class or Subclasses while the fitness clubs were closed, and whether it is unjust for Defendants to retain that benefit; and

g.      The amount of damages incurred by the Class and Subclasses.

39.     **Typicality.** Plaintiffs' claims are typical of those of the other class members because Plaintiffs and members of the Class or Subclasses were all charged membership fees by Defendants during a period in which TSI did not provide any Gym Access as set forth in their respective membership agreements and have not been refunded those fees.

40.     **Adequacy.** Plaintiffs are adequate representatives of the Class and Subclasses because their interests are aligned, and do not conflict, with the interests of the other class members. Plaintiffs have retained counsel who are experienced and competent in complex class action litigation, including consumer protection litigation. Plaintiffs and their counsel intend to vigorously prosecute this action for the benefit of the Class and Subclasses as a whole. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

41.     **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and members of the Class or Subclasses are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, making it

impracticable for class members to individually seek redress for Defendants' wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT I
### Breach of Contract
### (On behalf of the Class and, Alternatively, the Subclasses)

42.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "41" above as if set forth fully herein.

43.     Plaintiffs and members of the Class and Subclasses entered into valid membership agreements with Defendants pursuant to which Plaintiffs and members of the Class and Subclasses paid membership fees in exchange for Defendants' Gym Access ("Membership Agreements").

44.     Plaintiffs and members of the Class and Subclasses complied with their contractual obligations as set forth in the membership agreements by paying their membership fees, among other things.

45.     Defendants breached their contractual obligations as set forth in the membership agreements by charging Plaintiffs and members of the Class and Subclasses membership fees during a period in which Defendants did not provide Gym Access.

46.     Defendants automatically processed electronic payments for membership fees knowing that it could not provide Gym Access.

47.     As a result of Defendants' breach of the Membership Agreements,

Plaintiffs and members of the Class and Subclasses have been damaged.

## COUNT II
### Unjust Enrichment/Quasi-Contract
### (On behalf of the Class and, Alternatively, the Subclasses)

48.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "41" above as if set forth fully herein. This count is pled in the alternative to the breach of contract claim in the event the Court determines there is no enforceable written contract between TSI and Plaintiffs and the members of the Classes

49.     TSI charged Plaintiffs and members of the Class and Subclasses membership fees during a period in which TSI did not provide Gym Access because the clubs were closed due to COVID-19.

50.     Plaintiffs conferred a benefit upon TSI (i.e., payment of membership fees), and TSI has obtained said benefit without adequately compensating Plaintiffs therefore. Specifically, TSI obtained revenue based on charges for membership fees during a period in which TSI did not provide Gym Access. It is unfair, unjust, and in violation of principles of equity and good conscience for TSI to retain that benefit at the expense of the Plaintiffs and members of the Class and Subclasses.

51.     On behalf of themselves and the Class (and in the alternative, the Subclasses), Plaintiffs seek disgorgement of all revenue and profits resulting from the membership fees charged during a period in which TSI did not provide Gym Access and establishment of a constructive trust from which Plaintiffs and members of the Class (or Subclasses) may seek restitution.

## COUNT III
### Violation of the New York General Business Law Section 349
### (On behalf of the New York Subclass)

52.     Plaintiffs repeat and reallege each and every allegation contained in

paragraphs "1" through "41" above as if set forth fully herein.

53.    Fritsch and members of the New York Subclass are "person[s]," TSI is a "person," and TSI's Gym Access constitutes a "business" or "commerce" within the meaning of New York General Business Law Section 349 ("Section 349").

54.    Under Section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]," are unlawful. GBL §349.

55.    TSI violated Section 349 by willfully and knowingly charging Fritsch and members of the New York Subclass membership fees during a period in which TSI did not provide Gym Access because all of its clubs were closed due to COVID-19.

56.    As a result of TSI's violations of Section 349, Fritsch and the New York Subclass were damaged financially by their payment of the membership fees, in amounts to be proven at trial. Fritsch and the New York Subclass seeks actual damages, restitution, statutory trebling of damages, reasonable attorneys' fees and expenses, and other relief the Court may find just and proper. GBL §349.

## <u>COUNT IV</u>
### Violation of the New Jersey Consumer Fraud Act
### (On behalf of the New Jersey Subclass)

57.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "41" above as if set forth fully herein.

58.    Wilson and members of the New Jersey Subclass are "person[s]," TSI is a "person," and TSI's Gym Access constitutes "merchandise" within the meaning of New Jersey's Consumer Fraud Act ("CFA"). N.J. Stat. §§ 56:8-1, et seq.

59.    Under the CFA,

[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise,

misrepresentation, or the knowing, concealment, suppression, or
omission of any material fact with intent that others rely upon such
concealment, suppression or omission, in connection with the sale or
advertisement of any merchandise or real estate, or with the subsequent
performance of such person as aforesaid, whether or not any person has
in fact been misled, deceived or damaged thereby, is declared to be an
unlawful practice.

N.J. Stat. § 56:8-2.

60.     TSI violated the CFA by willfully and knowingly charging Wilson and
members of the New Jersey Subclass membership fees during a period in which TSI
did not provide Gym Access because all of its clubs were closed due to COVID-19.

61.     As a result of TSI's violations of the CFA, Wilson and the New Jersey
Subclass were damaged financially by their payment of the membership fees, in
amounts to be proven at trial. Wilson and the New Jersey Subclass seeks actual
damages, restitution, statutory trebling of damages, reasonable attorneys' fees and
expenses, and other relief the Court may find just and proper. N.J. Stat. § 56:8-19.

## REQUESTS FOR RELIEF

62.     Plaintiffs, on behalf of themselves and all other similarly situated,
request that the Court enter judgment as follows:

a.     An order certifying the Class and Subclasses, appointing Plaintiffs as
       class representatives, and appointing the undersigned counsel as class
       counsel;

b.     Actual and compensatory damages, in an amount to be proven at trial;

c.     Statutory damages, in an amount to be proven at trial;

d.     Equitable disgorgement and restitution, in an amount to be proven at
       trial;

e.     Pre- and post-judgment interest, to the full extent permitted by law;

f.      Payment of reasonable attorneys' fees and costs; and

g.      Any other relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs requests a trial by jury on all claims and issues so triable.

DATED: April 22, 2020                 **TYCKO & ZAVAREEI LLP**


By:  */s/Katherine M. Aizpuru*

Katherine M. Aizpuru (Bar ID: 5305990)
Hassan A. Zavareei (*Pro Hac Vice* Forthcoming)
hzavareei@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Daniel L. Warshaw (*Pro Hac Vice* Forthcoming)
dwarshaw@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

Melissa S. Weiner (*Pro Hac Vice* Forthcoming)
mweiner@pswlaw.com
Joseph C. Bourne (*Pro Hac Vice* Forthcoming)
jbourne@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile:  (612) 389-0610

Class Action Complaint

Jeff Ostrow (*Pro Hac Vice* Forthcoming)
ostrow@kolawyers.com
Jonathan M. Streisfeld (*Pro Hac Vice*
Forthcoming)
streisfeld@kolawyers.com
Kristen Lake Cardoso (*Pro Hac Vice*
Forthcoming)
cardoso@kolawyers.com
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

*Attorneys for Plaintiffs and the
Proposed Classes*